Argued and submitted July 10, alternative writ of
mandamus dismissed August 21, 1984

## STATE ex rel LeVASSEUR,
*Plaintiff-Relator,*

*v.*

## MERTEN,
*Defendant.*

### (No. 60-83-4667; SC S30407)

686 P2d 366

Stephen J.R. Shepard, Eugene, argued the cause for plaintiff-relator. With him on the brief was Diane DePaolis and Lane County Legal Aid Service, Eugene.

Michael D. Reynolds, Assistant Attorney General, argued the cause for defendant. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine Chute, Assistant Attorney General, Salem.

LENT, J.

## LENT, J.

The state, on relation of an unwed mother who receives public assistance, brought a cause in Lane County Circuit Court to establish paternity of her child and to require the putative father to provide support and maintenance for the child. The putative father moved for appointment of experts to conduct blood tests at state expense on himself, the mother and the child for the purpose of developing relevant evidence for his defense. The circuit court found the putative father to be indigent but denied the motion.

The putative father petitioned this court for an alternative writ of mandamus ordering the circuit court judge to rescind his order and to allow the putative father's motion or to show cause for failure to do so. We allowed the alternative writ.[1] The defendant circuit judge, while responding to the merits, also asserted that mandamus did not lie because relator had a "plain, speedy and adequate remedy" at law, relying on ORS 34.110.[2]

We hold that plaintiff-relator does have a plain, speedy and adequate remedy in the ordinary course of the law; accordingly, we order dismissal of the alternative writ.

---

[1] The basis for the petition and the alternative writ was the due process analysis in *Little v. Streater,* 452 US 1, 101 S Ct 2202, 68 L Ed2d 627 (1981). *Little* held that under the Connecticut paternity action scheme, due process required the provision of blood tests at state expense for an indigent putative father sued by the state on relation of the mother. We do not decide whether due process and *Little* would compel the same result under the Oregon statutory filiation proceeding scheme.

It has been made to appear to the court that properly administered blood tests can be of substantial benefit in resolving the primary issue of fact in disputed paternity proceedings. Our holding that he has an adequate remedy at law by way of appeal if he loses on that issue may result in considerable additional expense to the public, both in direct outlay of funds and in operation of the appellate court system. The argument was advanced to this court that it may well be much less wounding to the public purse to pay for blood tests in the beginning. That is an argument that might well be addressed to, and by, a legislative body.

[2] ORS 34.110 provides:

"A writ of mandamus may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

This court has previously addressed the unavailability of mandamus where the relator has a speedy and adequate remedy at law by way of a direct appeal. Where a criminal defendant sought mandamus relief to redress an alleged violation of the First Amendment to the United States Constitution, we held that the right to appeal a subsequent conviction, if any, was a speedy and adequate remedy precluding the issuance of a writ of mandamus. *State ex rel Maizels v. Juba,* 254 Or 323, 331-34, 460 P2d 850 (1969).

In *Henkel v. Bradshaw,* 257 Or 55, 475 P2d 75 (1970), we disallowed a peremptory writ of mandamus to compel the trial court to appoint counsel for a defendant in a contempt proceeding for failure to pay court-ordered child support. Mandamus did not lie because petitioner might be found not to be in contempt, in which case the right to counsel issue would be moot, and because if petitioner were found to be in contempt, his right to appeal would be a speedy and adequate remedy. We specifically rejected an argument that a party may have interlocutory relief by mandamus merely because the issue raised was a constitutional one. 257 Or at 60. This decision was based in part on the fact that otherwise mandamus might lie to entertain interlocutory appeals on every constitutional issue raised by a party prior to final judgment. 257 Or at 59.

**1.** Recently, these cases and others were crystallized into a rule:

> "Direct appeal is an adequate remedy unless the relator would suffer a special loss beyond the burden of litigation by being forced to trial."

*State ex rel Automotive Emporium v. Murchison,* 289 Or 265, 269, 611 P2d 1169 (1980). Our decisions reflect that an exception to this rule exists where the court below may lack jurisdiction or may be an improper venue for trial. 289 Or at 269, n. 5, and cases cited therein. *Automotive Emporium* dismissed an alternative writ of mandamus which would have required the trial court to provide criminal defendants charged by indictment with a "preliminary hearing." On denial of rehearing in the same case, we made clear that the above-mentioned rule followed prior caselaw and was consistent with our previous holdings in this area of law. *State ex rel*

*Automotive Emporium v. Murchison,* 289 Or 673, 616 P2d 496
(1980) (on denial of rehearing).

■      In the instant case relator does not contest the fact
that he has a right to appeal an adverse judgment.[3] This
appeal would provide an appellate court with a record of the
proceedings in an actual determination of paternity and a
foundation for a decision whether the putative father was
denied due process of law. The burden of litigation has been
imposed on relator by virtue of being named' as respondent in
a filiation proceeding. The consequences of a determination
that he is the father of the child are similar to the conse-
quences suffered by many non-prevailing respondents or
defendants in other types of court suits. They are less severe
than the typical criminal action.

Relator contends that special loss is implicated
because paternity determinations may lead to the establish-
ment of emotional ties between the child and the adjudicated
biological father. The only scenario we can envision which
would have relevance to this petition for a writ of mandamus
is that relator would be determined to be the biological father
in the trial court, would therefore establish emotional ties to
the child (and the child to him), then would at a later date be
determined not to be the biological father and, therefore, sever
the relationship. Without being insensitive to the seriousness
of such emotional bonds, we believe the above scenario is too
speculative to have an impact on the instant inquiry.[4] We are

---

[3] An almost identical appeal has been entertained by the Court of Appeals. *State
ex rel Adult & Family Ser. v. Stoutt,* 57 Or App 303, 644 P2d 1132 (1982). The court
therein decided an appeal from a determination of paternity on the sole issue that
respondent putative father had been denied his constitutional right to counsel. We
find it unquestionable that relator has a right to appeal a judgment that he is the father
of the child.

[4] In *Lehr v. Robertson,* ____ US ____, 103 S Ct 2985, 77 L Ed2d 614 (1983), the
Supreme Court of the United States held that a man who claimed to be the biological
father of a child, but who had not established any significant custodial, personal, or
financial relationship with the child, did not have a due process right to notice and an
opportunity to be heard in an action of adoption of the child. The court stated that
"the mere existence of a biological link does not merit * * * [substantial due process]
protection. The actions of judges neither create nor sever genetic bonds." 77 L Ed2d at
626. The opinion reflected a distinction between an inchoate and a developed
relationship. *See* 77 L Ed2d at 626, n. 17. Courts must be aware of and provide
reasonable protection for the latter, but not necessarily the former. The fact that a
parent-child relationship, as well as the fact of biological fatherhood, might be
established need not be noticed or assumed by a court in order to decide whether

not convinced that a significant correlation exists between court determinations of paternity and the creation or severance of emotional ties between father and child.

This mandamus action does not involve the jurisdiction of the trial court or a question of improper venue. Relator has not established a special loss occasioned by being forced to utilize the standard procedures of trial and appeal, if necessary, to correct error at trial. Relator's right to appeal an adverse determination is a speedy and adequate remedy in these circumstances. For those reasons, mandamus relief is unavailable to him.

The alternative writ of mandamus is dismissed.

---

procedures available to determine paternity are sufficient adequately to address the needs and interests of the parties and the child. This is true whether the standard of sufficiency is due process or a speedy and adequate remedy.